16165

GRIGGS v. GRIGGS
(51 S. E. (2d) 622)

178

*Messrs. C. B. Ruffin,* of Bishopville, and *John D. Nock,* of Cheraw, for *Appellant,*

*Mr. James E. Leppard,* of Chesterfield, *for Respondent,*

January 5, 1949.

TAYLOR, Justice.

For a better understanding of the question presented in this appeal it might be well to state that this court has passed upon other phases of this case on two prior occasions, see *Griggs v. Griggs,* 199 S. C. 295, 19 S. E. (2d) 477 and 205 S. C. 272, 31 S. E. (2d) 505. This litigation was begun by Victoria Griggs (respondent here) bringing an action in the Court of Common Pleas for Chesterfield County against S. J. Griggs (appellant here) wherein she contended that on August 30, 1927, she was seized and possessed, in fee simple, of a tract of land containing 141 and 51/100 acres more or less situated in Chesterfield County, South Carolina and that being such owner, she, by her said deed, dated that day conveyed this land to the defendant (appellant here) on the condition that he, his heirs and assigns should furnish to her maintenance and support for the remainder of her life; that failing in the performance of such condition the title to the land so conveyed should revert to her. She further contended that such condition had been breached and that she had therefore entered upon the premises and taken possession thereof "and has been since entirely seized and possessed of the said premises" further that not withstanding the foregoing the defendant continues to claim ownership of such premises by virtue of said deed and has wantonly and forcibly entered into and upon said premises committing various acts of ownership "and has threatened and continues to threaten to forcibly remove plaintiff from said premises."

The answer of the defendant was in effect a general denial and a plea that he and his predecessors in title therein were seized in fee simple of the tract of land described in the complaint by virtue of certain deeds; beginning with deed from David C. Griggs to C. Q. V. Griggs (C. Q. V. Griggs being the respondent here) dated January 11, 1896 and recorded January 18, 1896. By deed from respondent to Dr. J. W. Williamson dated September 18, 1905 recorded October 11, of that year. By deed from the heirs-at-law of Dr.

Williamson to Bright Williamson dated March 12, 1926, and duly recorded, and by deed from Bright Williamson to the appellant dated October 30, 1926, and recorded November 11, 1926. The defendant further alleged that since respondent here conveyed the land involved to Dr. J. W. Williamson in fee simple with general warranty in the year 1905 she is estopped from establishing any claim in said land in that defendant purchased said land from Bright Williamson in October, 1926, entered into possession thereof and has continually remained in sole possession thereof as owner in fee until "recently when plaintiff wrongfully and maliciously interferred with plaintiffs possession". A complete analysis of the complaint in the first suit shows that it was drafted upon the assumption that the principal issue would be whether or not the defendant (appellant here) had breached the conditions of the deed, that plaintiff was seized and possessed of the premises, that defendant had trespassed and threatened to continue to trespass and asked damages for such trespassing and that the defendant (appellant here) be permanently enjoined from committing further trespass. On the trial of the issues in the first suit the Master found that the defendant (appellant here) was seized in fee of the premises in question. The conclusion of the Master was modified by the Circuit Judge, however; on appeal to this court, the decree of the Circuit Judge was set aside and the conclusion of the Master that the defendant (appellant here) S. J. Griggs was seized in fee of the premises was sustained, see *Griggs v. Griggs,* 199 S. C. 295, 19 S. E. (2d) 477.

Plaintiff (respondent here) filed a petition for rehearing which this court denied, using the following language: "Adverse possession was not at issue in this case and the Court did not undertake to try such issue, the Court does not consider further comment proper. Petition dismissed."

S. J. Griggs (appellant here) next appealed to the Circuit Court for a writ of Assistance to obtain possession of these premises. This application was denied by the Circuit

Court, which held Mrs. Griggs (the respondent here) had established by affidavit a *Prima Facie* case of adverse possession therefore the writ should not issue and pointing out that the issue of adverse possession was not made in the first case and therefore not decided. Upon appeal to this court the ruling of the Circuit Judge was sustained. See *Griggs v. Griggs,* 205 S. C. 272, 31 S. E. (2d) 505.

This action was then commenced by the appellant to recover the possession of the specific premises. The defendant respondent answered as follows:

"For a First Defense:

"I

"Defendant denies each and every allegation in the complaint in this action contained not hereinafter expressly admitted.

"For a Second Defense:

"I

"Defendant admits, upon information and belief, that about October, 1926, the plaintiff procured from one Bright Williamson, a certain paper writing purporting to be a conveyance to him of the lands described in the complaint, but defendant denies that said Bright Williamson at the time owned any right, title, interest, claim or estate in said lands and therefore alleges and shows that said conveyance was and is a nullity and was ineffective to convey to plaintiff any title, interest, claim or estate in or to said lands, and defendant further denies that plaintiff has or has ever had any right, title, interest, claim or estate of any nature or character in or to said lands, or any part or parcel thereof.

"II

"That at the time of the delivery of the said alleged deed of Bright Williamson to plaintiff under which plaintiff claims to this action the lands described in the complaint were in the actual possession and occupancy of defendant, who was then and is now, claiming under a title by posses-

sion and occupation, adverse to that of the grantor in said deed.

"For a Third Defense:

"I

"That neither plaintiff, nor any ancestor, predecessor or grantor of plaintiff was seized or possessed of the premises described in the complaint, or any part thereof, within ten (10) years last past before the commencement of this action, but that this defendant has held, occupied and possessed said premises adversely to the pretended title of plaintiff for more than ten (10) years last past before the commencement of this action, under a claim of title in fee, exclusive of any other right.

"II

"That there has been an actual, open, notorious, exclusive, hostile, continuous and unbroken occupation and adverse possession of the said premises by defendant under a claim of title in fee for more than ten (10) years last past before the commencement of this action.

"III

"That during all of said time said premises so occupied by defendant have been usually cultivated, improved and used for husbandry, for the supply of fuel, timber, lumber and for the ordinary use of the occupant.

"For a Fourth Defense:

"I

"That neither plaintiff, nor any ancestor, predecessor or grantor of plaintiff was seized or possessed of the premises described in the complaint, or any part thereof, within twenty (20) years last past before the commencement of this action, but that this defendant has held, occupied and possessed said premises adversely to the pretended title of plaintiff for more than twenty (20) years last past before the commencement of this action, under a claim of title in fee exclusive of any other right.

"II

"That there has been an actual, open, notorious, exclusive, hostile, continuous and unbroken occupation and adverse possession of the said premises by defendant under a claim of title in fee for more than twenty (20) years last past before the commencement of this action.

"III

"That during all of said time said premises so occupied by the defendant have been usually cultivated, improved, and used for husbandry, for the supply of fuel, timber, lumber and for the ordinary use of the occupant.

"For a Fifth Defense:

"I

"That the premises described in the complaint were conveyed to the defendant by deed of Daniel C. Griggs dated the 11th day of January, 1896, and recorded in the office of the R. M. C. for Chesterfield County, S. C., on the 13th day of January, 1896, in deed book 13, at page 393; that defendant entered into the possession of said premises under said deed when it was made and delivered, as aforesaid, and that she has been in the actual, open, notorious, exclusive, hostile, continuous and unbroken occupation and adverse possession of the said premises since that time, and that neither the plaintiff nor his ancestor or grantor, was actually in the possession of said premises, or any part thereof, within the forty (40) years last past before the commencement of this action.

"For a Sixth Defense:

"I

"That on or about the 18th day of September, 1905, a deed was made and entered of record in the office of the clerk of Court of Chesterfield County, South Carolina, in deed book 22, at page 253, purporting to be a conveyance by the defendant of the lands described in the complaint to one J. W. Williamson, and that said alleged deed constitutes a link in the claim of title of plaintiff; that the said

J. W. Williamson did not go into possession of said lands under said deed and was never in the actual possession of any part of the same; that soon after the said alleged deed was made, as aforesaid, the said J. W. Williamson made demand on defendant for the delivery of the possession of said premises and which defendant then and there refused, denied that she was tenant or trustee of said Williamson, and then and there and repeatedly thereafter asserted that she was holding the possession of said lands under a claim of title by possession and occupation, adverse to that of the said J. W. Williamson.

"Wherefore, defendant demands:

"1. That the complaint be dismissed upon its merits.

"2. For a judgment against the plaintiff for costs and disbursements in this action."

Appellant, after due notice, moved to strike out all of the defenses, except the first, upon the ground that they are not relevant and/or legal and do not constitute a defense to the action set forth in the complaint in that they are further attempts on the part of the defendant to make claim for title to said premises after such title had been adjudicated thereby becoming *res judicata.*

On May 27; 1947, Judge Lewis heard and denied appellant's motion and plaintiff now appeals to this court upon exception which posed the one question of whether or not respondent is entitled to plead adverse possession by reason of this court's decision heretofore referred to and reported at· 199 S. C. 295, 19 S. E. (2d) 477, or whether such defense is barred by the doctrine of *res judicata.*

"The doctrine of *res judicata* is that an existing final judgment rendered upon the merits without fraud or collusion, by a court of·competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies," 30 Am. Jur., Sec. 161, at page 908.

"A final judgment rendered by a court of competent jurisdiction, on the merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand, and cause of action. If, however, the two suits do not involve the same claim, demand, and cause of action, such effect will not be ordinarily given to the prior judgment. In this respect, it is worthy of notice that there must be not only identity of subject matter, but also of the cause of action, so that a judgment in a former action, where the cause of action is not the same, although each action relates to the same subject matter". 30 Am. Jur., Sec. 172 at page 914.

"In the application of the doctrine of *res judicata,* if it is doubtful whether a second action is for the same cause of action as the first, the test generally applied to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both. If the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions a judgment in one is no bar to the maintenance of the other. It has been said that this method is the best and most accurate test as to whether a former judgment is a bar in subsequent proceedings between the same parties, and it has even been designated as infallible". 30 Am. Jur., Sec. 174, at page 174.

"The rule granting conclusiveness to a judgment in regard to issues of fact which could properly have been determined in the action is limited to cases involving the same cause of action. Where a second action is upon a different claim, demand, or cause of action, the established rule is that the judgment in the first action operates as an estoppel only as to the points or question actually litigated and determined, and not as to matters not litigated in the former

action, even though such matters might properly have been determined therein. Accordingly, before the doctrine of *res judicata* is applied in such cases, it should appear that the precise question involved in the subsequent action was determined in the former action. These rules prevail whether the judgment is used in pleading as a technical estoppel, or is relied on by way of evidence as conclusive *per se*". 30 Am. Jur., Sec. 180, at page 925.

The general rules applicable to the doctrine of *res judicata* as determined by this court are set forth in *Hart v. Bates,* 17 S. C. 35; *Whaley v. Stevens,* 24 S. C. 479; *Chick Springs Water Co. v. State Highway Department,* 178 S. C. 415, 183 S. E. 27; *Johnston-Crews Co. v. Folk,* 118 S. C. 470, 111 S. E. 15; *Lyerly v. Yeadon,* 199 S. C. 363, 19 S. E. (2d) 648.

In *Whaley v. Stevens, supra,* this court speaking through Mr. Justice McIver said:

"It seems to be supposed that the cause of action in both of the cases was the defendant's obstruction of the road, and therefore, that it was the same in both cases. But this was only one of the elements going to make up the plaintiff's cause of action. As is said in Pomeroy on Remedies, section 519, pages 554-5: 'Every action is based upon some primary right held by the plaintiff, and upon a duty resting upon the defendant corresponding to such right. By means of a wrongful act or omission of the defendant, this primary right and this duty are invaded and broken, and there immediately arises from the breach a new remedial right of the plaintiff, and a new remedial duty of the defendant. Finally, such remedial right and duty are consummated and satisfied by the remedy, which is obtained through means of the action, and which is its object. Now, it is very plain that, using the words according to their natural import and according to their technical legal import, the "cause of action" is what gives rise to the remedial right, or the right of remedy, which is evidently the same as the term "right

of action", frequently used by judges and text-writers. This remedial right, or right of action, does not arise from the wrongful act or omission of the defendant, the delict alone, nor from the plaintiff's primary right, and the defendant's corresponding primary duty alone, but from these two elements taken together. The "cause of action", therefore, must always consist of two factors (1) the plaintiff's primary right and the defendant's corresponding primary duty, whatever be the subject to which they relate—person, character, property, or contract; and (2) the delict, or wrongful act or omission of the defendant, by which the primary right and duty have been violated.'

"From this, it follows that the wrongful act of the defendant (if, indeed, it was wrongful), in obstructing the road in question, did not constitute the cause of action in either case, but would be only one of the elements of such causes in both cases, and could only in combination with the other necessary element, the plaintiff's primary right, constitute a cause of action; and as the nature of the plaintiff's right, as alleged in the first case, was essentially different from that alleged in the present action, it would seem to follow that the causes of action in the two cases could not be the same."

This court in its order denying a petition for a rehearing in the first case held, "Adverse possession was not at issue in this case and the court did not undertake to try such issue. The court does not consider further comment proper. Petition dismissed".

In the first case the plaintiff, the defendant (respondent in this action) based her claim of ownership of the specific lands upon the grant of the premises to her by her father, her deed to the defendant, appellant here, the breach of the conditions of the aforesaid deed by appellant and her re-entry.

In *Johnston-Crews Co. v. Folk, supra* [118 S. C. 470, 111 S. E. 19], the following quotation from the case of *Water,*

*Light & Gas Co. v. City of Hutchinson,* 8 Cir., 160 F. 41, 19 L. R. A., N. S., 219, was cited and approved:

"The fact that a party through mistake attempts to ∎ exercise a right to which he is not entitled or has made choice of a supposed remedy which never existed, and pursued it until the court adjudged that it never existed, does not preclude him from afterwards pursuing a remedy for relief, to which in law and good conscience he is entitled."

A judgment is *"res judicata"* so as to bar a claim in ∎ a subsequent action only where rendered upon merits upon same matters in issue and between same parties or their privies, "matters in issue" being that matter upon which plaintiff proceeds by his action and which defendant controverts by his pleadings. *Rogers v. Detroit Automobile Inter-Insurance Exchange,* 275 Mich. 374, 266 N. W. 386, 388.

The essential elements of *res judicata* are identity of ∎ parties, identity of the subject matter, and an adjudication in a former suit of the precise question sought to be raised in the second suit. See *Brown v. Huskamp,* 141 S. C. 121, 139 S. E. 181, 182.

In order for one to avail himself of the plea of *"res judicata"* there must be identity in thing sued for, identity of cause of action, identity of persons and parties to action and identity of quality in persons for or against whom claim is made, *Lake Region Hotel Co. v. Gollick,* 111 Fla. 64, 149 So. 205, 207, and *Freudenreich v. Mayor and Council of Borough of Fairview,* 114 N. J. L. 290, 176 A. 162, 163, see also *People v. Albers,* 137 Mich. 678, 100 N. W. 908, 910; *Keith v. City of Philadelphia,* 126 Pa. 575, 17 A. 883; *In re Evans,* 42 Utah 282, 130 P. 217; *Freeman v. McAninch,* 6 Tex. Civ. App. 644, 24 S. W. 922.

To work an estoppel by judgment, the former judg- ∎ ment must be directly in point and involve the identical matter presented in the new action. *Water Com-*

*missioners of City of New Brunswick v. Cramer,* 61 N. J. L. 270, 39 A. 671, 68 Am. St. Rep. 705. It is a well settled rule of law that where a defendant neglects to plead a matter proper to his defense at the proper time he may never take advantage thereafter, however, it must be kept in mind that the respondent here who seeks in this case to establish her claimed right by adverse possession was the plaintiff, and not the defendant, in the first case.

This court is of the opinion that the right of adverse possession was not a matter at issue in the first case and not being in issue was not adjudicated, therefore: the doctrine of *"res judicata"* cannot be relied upon as a bar to such plea in this case.

Appeal dismissed.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.